1  Joseph Lavi, Esq. (State Bar No. 209776)
   jlavi@lelawfirm.com
2  Vincent C. Granberry, Esq. (State Bar No. 276483)
   vgranberry@lelawfirm.com
3  **LAVI & EBRAHIMIAN, LLP**
   8889 W. Olympic Blvd., Suite 200
4  Beverly Hills, California 90211
   Telephone: (310) 432-0000
5  Facsimile: (310) 432-0001

6  Attorneys for Plaintiffs Hector Alvarado,
   Mikey Amaya, and the Settlement Classes
7
   *(ADDITIONAL COUNSEL ON NEXT PAGE)*
8

9

              **UNITED STATES DISTRICT COURT**
10
             **NORTHERN DISTRICT OF CALIFORNIA**
11

12 | HECTOR ALVARADO, MIKEY AMAYA, | Case No. 3:17-cv-06425-SK
   and JUSTIN TITUS on behalf of themselves
13 and others similarly situated. | Magistrate Judge Sallie Kim
14
15          PLAINTIFF, | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; AND**
16
17  vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
18
19 OAK HARBOR FREIGHT LINES, INC.; and | [*Filed concurrently with Declarations in Support; [Proposed] Judgment and Order*]
   DOES 1 TO 100, INCLUSIVE.
20
21          DEFENDANTS. | Date: January 27, 2025
                          Time: 9:30 a.m.
22                        Dept: Courtroom C, 15th Floor
23                        Complaint Filed: September 11, 2017
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MAYALL HURLEY P.C.**
ROBERT J. WASSERMANN (SBN 258538)
rwassermann@mayallaw.com
VLADIMIR J. KOZINA (SBN 284645)
vjkozina@mayallaw.com
2453 Grand Canal Boulevard
Stockton, California 95207-8253
Telephone: (209) 477-3833
Facsimile: (209) 473-4818
Website: www.mayallaw.com

Attorneys for Plaintiff Justin Titus and
the Settlement Classes

**NOTICE OF MOTION AND MOTION**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 27, 2025 at 9:30 a.m., in Courtroom C of the United States District Court for the Northern District of California, the Honorable Sallie Kim, presiding, Plaintiffs Hector Alvarado, Mikey Amaya, and Justin Titus, on behalf of themselves, the settlement Classes, the California Labor & Workforce Development Agency, and all other allegedly similarly situated aggrieved employees (collectively "Plaintiffs"), move the Court for final approval of the Joint Stipulation of Class and Representative Action Settlement and Release of Claims (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the Declaration of Malcolm Clayton in Support of Plaintiffs' Motion for Preliminary Approval, Dkt. 79-1), and entry of judgment in accordance with the Settlement.

Plaintiffs make this motion on the grounds that good cause exists and the Settlement, reached after arm's length negotiations by Class Counsel and counsel for Defendants Oak Harbor Freight Lines, Inc. ("Defendant" or "OHFL"), is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, no objection has been raised), and should be granted approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declarations of Counsel and Garvin Brown of ILYM Group, Inc., and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval of Class Action Settlement with their moving papers.

Date: December 23, 2024                          Respectfully submitted,

*/s/ Malcolm Clayton*
_____

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Malcolm E. Clayton, Esq.
LAVI & EBRAHIMIAN, LLP
Attorneys for Plaintiffs and the Plaintiff Class

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

Plaintiffs Hector Alvarado, Mikey Amaya, and Justin Titus, on behalf of themselves, the
4 Classes, and the California Labor & Workforce Development Agency ("LWDA") (collectively
5 "Plaintiffs"), having reached a class-wide and California Private Attorneys General Act ("PAGA")
6 representative action settlement with Defendant Oak Harbor Freight Lines, Inc. ("Defendant" or
7 "OHFL"), which was preliminarily approved by this Court on June 21, 2024, now seek final
8 approval of the settlement. The settlement of this wage and hour class and representative action
9 meets the criteria for final approval. The settlement fairly resolves Plaintiffs' claims that
10 Defendant violated various California wage and hour laws, including, but not limited to, failing
11 to pay all hours worked, failing to pay minimum wages, failing to pay overtime wages, failing to
12 authorize and permit and/or make available meal periods, failing to authorize and permit and/or make
13 available rest periods, failing to pay sick leave at the proper rate, failing to indemnify employees for
14 employment-related losses/expenditures, failing to provide one day of rest per workweek, failing to
15 provide complete and accurate itemized wage statements, failing to maintain or keep payroll records,
16 failing to timely pay earned wages during employment, failing to timely pay wages due at time of
17 separation, and engaging in unfair business practices in violation of the California Business and
18 Professions Code, as well as resolving claims that Defendant violated various provisions of PAGA and
19 as a result owes civil penalties.

20

After seven years of intense litigation, including waiting for the California Supreme Court
21 to resolve several issues related to Plaintiff's derivative claims, and following formal discovery,
22 amendments to the complaint, voluminous informal pre-mediation discovery, two mediations
23 separated by several years, and extensive arm's-length negotiations between counsel and the
24 mediator following the second mediation, the Parties reached a global settlement memorialized
25 in the Joint Stipulation of Class and Representative Action Settlement and Release of Claims (the
26 "Settlement Agreement" or the "Settlement".) [1] (*See,* Declaration of Malcolm Clayton in Support

27

28

---

[1] The Settlement is attached as Exhibit 1 to the Declaration of Malcolm Clayton in Support of Motion for

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    **Case No. 3:17-cv-06425-SK**
*Page 1*

of Final Approval ["Clayton Dec."] ¶¶ 3-12.)

The Settlement, in the amount of $3,625,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage and hour class and representative actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the Action before agreeing to the Settlement. (*See,* Clayton Dec. ¶ 5-9, 41-46; Declaration of Robert Wassermann ["Wassermann Dec."] ¶¶ 7-12, 31-34.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See, Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. The Settlement Administrator sent out 2,222 notices of Settlement and received **no** objections. (*See*, Declaration of ILYM Group, Inc. Representative Garvin Brown ["Admin Dec."] ¶¶ 7-9.)

Given the strong recovery and that the Settlement will provide significant monetary payments to Class Members (more than $1,000 per person), the Court should approve the Settlement. By any measure, the Settlement provides a great benefit to the Class and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, the Settlement should be finally approved.[2]

## II.    BACKGROUND

### A.    Procedural History

On September 11, 2017, Plaintiff Hector Alvarado and Mikey Amaya filed the present action against Defendant in the Alameda County Superior Court, on behalf of themselves and a

---

Preliminary Approval of Class Action and PAGA Settlement (Dkt. 79-1)

[2] In a separate motion filed on December 23, 2024 (Dkt. 87), Plaintiffs seek approval of an award of attorneys' fees, costs, and incentive awards for the named Plaintiffs.

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    Case No. 3:17-cv-06425-SK
Page 2

putative class, in the matter captioned *Hector Alvarado, et al. v. Oak Harbor Freight Lines, Inc. et al* Case No. RG17874785 (the "Action" or "Alvarado Action"). On November 3, 2017, Defendant timely removed this Action to the United States District Court for the Northern District of California, as Case No. 3:17-cv-06425-SK, pursuant to the Class Action Fairness Act ("CAFA"). On November 20, 2018, Plaintiff Alvarado and Plaintiff Amaya filed a First Amended Complaint in this Action, adding PAGA claims to the lawsuit. (Clayton Dec. ¶ 13.)

On July 11, 2018, Plaintiffs Hector Alvarado, Mikey Amaya and Defendant attended a mediation in Northern California, facilitated by Mediator Mark S. Rudy, which did not yield a successful resolution and resulted in continued litigation for several years thereafter. (*Id*. ¶ 14.)

On October 26, 2022 in the United States District Court for the Eastern District of California, Plaintiff Justin Titus filed a putative class and PAGA representative action lawsuit against Defendant in the United States District Court for the Eastern District of California, captioned *Justin Titus et al. v. Oak Harbor Freight Lines, Inc. et al.*, Case No. 2:22-cv-01929-KJM-JDP (the "Titus Action"). On or around May 18, 2023, the Titus Action was transferred to the United States District Court for the Northern District of California and was assigned Case No. 3:23-cv-02448-SK. (*Id*. ¶ 15.)

Pursuant to California Labor Code § 2699.3, subd.(a), all three Plaintiffs gave timely written notice to Defendant and the LWDA of their PAGA claims by submitting their respective PAGA Notices. (Clayton Dec. ¶ 16.)

On April 27, 2023, the Parties participated in a second good-faith, arms-length mediation session, presided over by Eve Wagner, but the Parties were unable to reach a resolution of the Alvarado Action and Titus Action at that time. Mediator Wagner thus continued to work with the Parties over the following months and the Parties eventually reached a settlement by accepting a mediator's proposal, the principal terms of which were memorialized in a binding Memorandum of Understanding, fully executed by the Parties. (*Id.* ¶¶ 17-18.)

On March 20, 2024, Plaintiffs Hector Alvarado, Mikey Amaya, and Justin Titus filed the consolidated Second Amended Complaint, which is now the Operative Complaint in this Action

/ / /

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                        **Case No. 3:17-cv-06425-SK**
Page 3

1    (i.e., the Alvarado Action),[3] and which consolidated all claims that Plaintiffs alleged or could

2    have asserted against Defendant in the Alvarado Action and the Titus Action. (*See* Dkt. 68;

3    Clayton Dec. ¶ 19.)

4        On March 26, 2024, Plaintiff Titus dismissed the Titus Action without prejudice because

5    all of his claims were consolidated into this Action and he became a named plaintiff in this

6    Action. (*Id*. ¶ 20.)

7        On or about April 22, 2024, the Parties executed the Settlement. (*Id*. ¶ 21.)

8        On May 9, 2024, Plaintiffs filed their unopposed Motion for Preliminary Approval. (*Id*. ¶

9    22.)

10       On June 10, 2024, the Court held a hearing on Plaintiffs' Motion for Preliminary

11   Approval. (*Id*. ¶ 23.)

12       On June 21, 2024, the Court granted Plaintiffs' Motion for Preliminary Approval of Class

13   Action and PAGA Settlement. (Dkt. 85; Clayton Dec. ¶ 24.)

14       Defendant has timely served the CAFA Notices and the service was completed more than

15   90 days prior to January 27, 2025. No objections or comments have been received in response to

16   the CAFA notices. (Clayton Dec. ¶ 25.)

17       On September 4, 2024, the Court-approved notice-packets were sent to Class Members.

18   (Admin Dec. ¶ 7.)

19       The deadline for Class Members to submit requests for exclusion or written objections to

20   the Settlement was November 4, 2024. (*Id*. ¶¶ 11-12.)

21       The following three individuals timely submitted requests for exclusion: (i) Charles Ernest

22   III, (ii) Sammy Burrola, and (iii) Pedro Ibarra. (*Id*. ¶ 11.)

23       There were no written objections to the Settlement. (*Id*. ¶ 12.)

24       B.    <u>Mediation and Settlement</u>

25       A mediation was first conducted in this case in mid-2018.  However, the Action was not

26

27   _____

28   [3] The Parties agreed, and the Court subsequently issued an order confirming, that Defendant has no obligation to answer or otherwise respond to the SAC pending the Court's evaluation of the Parties' Settlement.  (Dkt. 67.)

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    Case No. 3:17-cv-06425-SK
Page 4

resolved at that time in part because, in the matter titled *Naranjo v. Spectrum Sec. Srvcs., Inc.*, 13 Cal.5th 93 (Cal. 2023), the California Supreme Court was addressing a key legal issue related to several derivative claims in the Action. (Clayton Dec. ¶ 4.) The Parties then proceeded to litigate for several years, including propounding written discovery, taking several depositions, etc. (*Id.* ¶ 5.) A global mediation of the Alvarado Action (i.e., this case) and Titus Action occurred on April 27, 2023, with well-respected mediator Eve Wagner. (*Id.* ¶ 6.) In advance of mediation, Plaintiffs received voluminous data and information from Defendants, including, but not limited to, policies and procedures, timekeeping records, and payroll data.  This information, along with the independent investigation conducted by Plaintiffs' counsel and expert, was sufficient for Plaintiffs to assess the strengths and weaknesses of the case and to perform a thorough damages analysis. (*Id.* ¶ 7.) Plaintiffs' expert analyzed Defendant's policies and procedures, and voluminous payroll and timekeeping data in order to evaluate Defendant's exposure to Plaintiffs' claims.  This discovery and expert analysis was incorporated into Plaintiffs' damages analysis for mediation. (*Id.* ¶ 8.) With the assistance of Ms. Wagner, counsel engaged in serious and arm's-length negotiations for many months that were contentious and adversarial. (*Id.* ¶ 9.)

Ultimately, a mediator's proposal was made and on August 21, 2023, the Parties accepted the mediator's proposal, and, following further non-collusive, arm's length negotiations, the Parties executed the Settlement which resolves all claims in the Titus Action and Alvarado Action that Plaintiffs alleged or could have asserted against Defendant for $3,625,000. Several drafts and revisions were circulated in order to arrive at the final settlement. (*Id.* ¶ 10.)

C.    <u>Preliminary Approval of the Settlement</u>.

On June 10, 2024, the Court held the hearing on Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement and on June 21, 2024, filed its Order Granting Motion for Preliminary of Approval of Class Action Settlement.  In its Order, the Court found that: "[T]he Settlement Agreement along with the amended class notice submitted by the Plaintiffs on June 11, 2024 (which shall now be considered Exhibit A to the Settlement Agreement), is preliminarily approved as fair, reasonable, and adequate, and in the best interests of the Classes as set forth below. The Court further finds that the Settlement Agreement

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    Case No. 3:17-cv-06425-SK
Page 5

substantially fulfills the purposes and objectives of the class and PAGA action, and provides substantial relief to the Classes without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal." (Dkt. 85.)

Review of the factors for final approval support the Court's preliminary findings that the Settlement was entered into good faith and is in the best interests of the Class Members.

## III.    TERMS OF THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

A.    Settlement Classes.

The Class Members are as defined as: (1) all current and former non-exempt employees, except drivers, employed by Defendant in the State of California from September 11, 2013, through October 2, 2023 (the "Nondriver Class") and (2) all non-exempt drivers who were employed by Defendant in the State of California from May 27, 2017, through October 2, 2023 (the "Driver Class"). (*See,* Dkt. 85, ¶ 5; Settlement §§ 1.8, 1.12, 1.13, 1.20, 1.34.)

B.    Notice Process.

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (Dkt. 85, ¶¶ 8-10). The Parties implemented the Court's directions in this regard.

After obtaining quotes for multiple administrators, the Parties selected, and the Court approved, ILYM Group, Inc. ("ILYM"), to administer the Settlement. (*See,* Clayton Dec. ¶ 34; Dkt. 85, ¶ 9).  Garvin Brown was the designated Case Manager for the administration of the Settlement. (*See,* Admin Dec.)

On June 21, 2024, Plaintiffs' Counsel provided ILYM with the Order Granting Preliminary Approval, the approved Notice of Settlement, and the Settlement Agreement. (*Id.* ¶ 4.)

On or around August 6, 2024, Counsel for Defendant provided ILYM with a class data file, containing mailing addresses for 2,222 Class Members, which contained the names, Social Security numbers, last known mailing addresses, job titles, class workweeks, PAGA pay periods, and employment dates (the "Class List"). (*Id.* ¶ 5.)

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                    Case No. 3:17-cv-06425-SK
Page 6

Prior to mailing Notice Packets, ILYM processed and updated the mailing addresses contained in the Class List by using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (*Id.* ¶ 6.)

On September 4, 2024, ILYM mailed Class Notices to all 2,222 Class Members via U.S. First Class. (*Id.* ¶ 7.) The Class Notices informed Class Members that they could submit requests for exclusion or written objections to the Settlement through November 4, 2024. (*Id.* ¶¶ 7, 11-12, Ex. A.)

As of December 3, 2024, 175 Notice Packets have been returned to ILYM as undeliverable without a forwarding address.  (*Id.* ¶ 8.) ILYM performed skip-trace advanced address searches and re-mailed 145 Notice Packets to new addresses obtained through this process. (*Id.* ¶ 9.) Ultimately, 31 Notice Packets (1.4% of 2,222) were deemed undeliverable. (*Id.* ¶10.)

As of December 3, 2024, ILYM has received no objections to the Settlement. (*Id.* ¶12.)

As of December 3, 2024, ILYM has received requests for exclusion from the following Class Members: (i) Charles Ernest III, (ii) Sammy Burrola, and (iii) Pedro Ibarra, and no opt outs to the Settlement. (*Id.* ¶11.)

C.    Gross Settlement Payment

The Settlement creates a non-claims-made, non-reversionary common fund of a $3,625,000.00 Gross Settlement Amount to settle all aspects of the case. (Settlement § 1.25; Clayton Dec. ¶ 26.) The Net Settlement Amount is defined as the Gross Settlement Amount less deductions for: Service Payment Awards to the three Named Plaintiffs (not to exceed $10,000.00 each), attorney's fees to Class Counsel (not to exceed one-third of the Gross Settlement Amount, or $1,208,333.33), Class Counsel's actual costs (not to exceed $20,000.00), administrative expenses to the Settlement Administrator, ILYM Group, Inc. ("ILYM") (not to exceed $20,000.00, estimated at $18,450.00), Defendant's payroll tax payments for the wage portion of individual class payments, payment to the LWDA for its 75% share of the alleged PAGA penalties ($75,000.00), and payment to the PAGA Members for their 25% share of the alleged

/ / /

/ / /

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                           Case No. 3:17-cv-06425-SK
Page 7

PAGA Penalties ($25,000.00).[4] (Settlement, §§ 1.32, 4.1, 4.3; Clayton Dec. ¶ 27.)

       D.    <u>Distribution of Settlement Payments</u>

The Net Settlement Amount to be paid to Participating Class Members is approximately $2,248,21.67, less employer-side payroll taxes. (Admin Dec. ¶ 13; Settlement §§ 1.32, 4.3.) Participating Class Members are those who did not request exclusion from the Settlement. Participating Class Members will receive a direct settlement award payment without the need to submit a claim form. (*See*, Settlement §§ 1.46, 8.7.1.)

The allocation or amount to be paid to each Participating Class Member will be determined as follows: Each Participating Class Member's number of Workweeks during the applicable Class Period will be divided by the total number of Workweeks for all Participating Class Members during the Class Periods, and the resulting figure will be multiplied by the Net Settlement Amount. (*Id.* § 4.3.4.)

The allocation or amount to be paid to each PAGA Member will be determined as follows: Each PAGA Member's number of Pay Periods during the applicable PAGA Period will be divided by the total number of Pay Periods for all PAGA Members during the PAGA Periods, and the resulting figure will be multiplied by the Net PAGA Settlement Amount. (*Id.* § 4.3.5.)

Participating Class Members will receive a check and be bound by the Settlement, regardless of whether such Participating Class Member raises any verbal objections at the Final Approval Hearing. (*Id.* §§ 1.52, 8.5.1.)

All settlement checks will be valid for one hundred eighty (180) calendar days. At the end of the 180-day period, settlement checks will be canceled. (Settlement, § 8.7.1; Clayton Dec. ¶ 39.) The total residual will escheat to the State of California Controller's Office, Unclaimed Property Division. (Settlement, §8.7.3; Clayton Dec. ¶ 31.)

/ / /

---

[4] As noted above, the Parties agreed to allocate $100,000 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. (Clayton Dec. ¶ 38.) The Settlement Administrator shall pay 75%, or $75,000.00, of this amount to the LWDA, and 25% to the PAGA Members based on the number of PAGA Pay Periods worked by the PAGA Members during the applicable PAGA Periods. (Settlement, §§ 1.31, 4.3.5.1.)

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                       Case No. 3:17-cv-06425-SK
*Page 8*

E.      Release by Participating Class Members and PAGA Members

Upon the Effective Date of the Settlement, each Participating Class Member will fully release the Released Parties from all claims that were asserted against Defendant, or could have been asserted against Defendant and/or the other Released Parties based on, arising out of, or relating to the facts or allegations set forth, in any of the complaints in the lawsuits (i.e., this Action and the Titus Action), including, but not necessarily limited to, all claims alleged against Defendant in the Operative Complaint. (Clayton Dec. ¶ 32; Settlement, §§ 5, 5.2, 5.2.2-5.2.3, 5.3.1-5.3.2.) Upon the Effective Date of the Settlement, Plaintiffs Alvarado, Amaya, and Titus also agree to a general release of all known and unknown claims they may have against the Released Parties. (Clayton Dec. ¶ 32; Settlement, §§ 5, 5.1.)

E.      Other Action Likely Affected by the Settlement's Release

The Parties are aware of the following lawsuit, which includes claims that are likely to be resolved by the Settlement: *Devantae Aguirrie v. Oak Harbor Freight Lines, Inc.*, Case No. CIVSB2302784 (the "Aguirrie PAGA Action") (which is a purported PAGA action, filed on January 19, 2023)[5] (the Aguirrie PAGA Action and Aguirrie Class Action together constitute the "Aguirrie Actions").  Although the Aguirrie PAGA Action remains active, Plaintiff Aguirrie has submitted a request to dismiss the Aguirrie PAGA Action with prejudice as to his individual claims and without prejudice as to his representative claims as a result of an individual settlement reached between Plaintiff Aguirrie and Defendant.  The Court has acknowledged the filing of this request and is expected to administratively close the case once the dismissal reaches the judge's chambers.  (Clayton Dec. ¶ 37.)

Counsel for plaintiff in the Aguirrie Actions ("Aguirrie Counsel") did not participate in the negotiation of the Settlement and has not participated in any manner in this case. There has been no communication between Plaintiffs and Class Counsel, on the one hand, and Aguirrie

---

[5] Plaintiff Devantae Aguirrie had also filed a putative wage and hour class action against Defendant, captioned *Devantae Aguirrie v. Oak Harbor Freight Lines, Inc.*, Case No. 2:23-cv-00516-WBS-DB (the "Aguirrie Class Action"), which would have been impacted by this Settlement.  On October 15, 2024, the Court dismissed the Aguirrie Class Action with prejudice as to Plaintiff Aguirrie's individual claims and without prejudice, following an individual settlement reached between Plaintiff Aguirrie and Defendant.

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                    Case No. 3:17-cv-06425-SK
Page 9

Counsel, on the other hand. (Clayton Dec. ¶ 38.) When the Aguirrie Actions were filed in January 2023, such claims had already been heavily litigated in this case since its inception in 2017, informal and formal discovery obtained, a mediation attempted, a second mediation scheduled, and coordination between the Alvarado Action and Titus Action established. Indeed, the date for the second mediation (April 27, 2023) was set by Class Counsel and Counsel for Defendant on July 26, 2022, nearly six months prior to the filing date of the Aguirrie Actions. (*Id.*) Said filing date being a mere three months before the mediation. (*Id.*) Given that the Aguirrie Class Action has already been dismissed and the Aguirrie PAGA Action is expected be imminently dismissed, coupled with the timeline of the Alvarado Action and Titus Action, the substantial efforts of Plaintiffs and Class Counsel, and the timeline and procedural posture of the Aguirrie Actions, the existence of the Aguirrie PAGA Action should have no bearing on assessing the fairness of the Settlement. (*Id.*) As discussed herein, the Settlement is fair, reasonable, and appropriate for the Court to approve, since it resolves the dispute by requiring Defendant to pay millions of dollars and in the process provides Participating Class Members with over $1,000 per person on average. (*Id.*)

## IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A.    <u>The Settlement Is Fair, Reasonable, and Adequate and Therefore Satisfies the Final Approval Standards Under Rule 23.</u>

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution,"

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    Case No. 3:17-cv-06425-SK
Page 10

especially in complex class actions. *Officers for Justice*, 688 F.2d at 625. Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy […] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, the Court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel […] and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625*; see also, Class Plaintiffs*, 955 F.2d at 1291 (quoting *id.); accord, Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement, (2) the meaningful formal and informal discovery conducted, (3) Class Counsel's significant experience in this type of litigation, and (4) the arm's-length negotiations before an experienced mediator. *See, Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are prima facie evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987) ("Where, as here, a proposed class

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                    Case No. 3:17-cv-06425-SK
Page 11

settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class." *See, Villafan v. Broadspectrum Downstream Services, Inc.*, No. 18-cv-06741-LB, ECF 150 at *10-11 (N.D. Cal. April 8, 2021) (Beeler, M.J.), citing *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id*. at 1026 (citation omitted).

Applying this standard of review to other federal and California wage and hour class actions, this Court and others in this District have previously approved settlements similar to that reached in this case. Likewise, in its June 21, 2024 order, the Court preliminarily approved the Settlement with respect to the Class Members. (*See,* Dkt. 85)*.* Accordingly, the only step that remains is final approval of the Settlement as to the Classes. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

> **1. The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class-Action Status Throughout Trial.**

Weighing the significant risks associated with further litigation against the strengths of Plaintiffs' case supports approval of Settlement here. When a party continues to deny liability, there is an inherent risk in continuing litigation. Litigating the class action claims, here, would require substantial additional preparation and resources. (Clayton Dec. ¶ 44.)  Class certification

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                    Case No. 3:17-cv-06425-SK
Page 12

remains hotly contested in the litigation, indeed, Defendant maintains that class certification is wholly improper because, among other things, individualized issues will predominate over any common questions. If the Court sides with Defendant and refuses to certify the Driver Class and/or Nondriver Class, relevant Class Members will not receive any compensation at all. (*Id*.)

While Plaintiffs are confident in their ability to successfully litigate the alleged claims on the merits, the risks of doing so are substantial. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S.Dist.LEXIS 44852, at *5 (N.D. Cal. April 21, 2011), the court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also, Greko v. Diesel U.S.A., Inc*. No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …). Here, Defendant similarly continues to contest liability and the propriety of class certification, injecting uncertainty and risk in continuing to litigate.

As to PAGA penalties, it is within the Court's discretion to determine the amount, which could have resulted in a lesser award than recovered under the Settlement. For example, in *Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504 (2018), the trial Court reduced the PAGA penalty amount to only $5 per pay period and in *Magadia v. Wal-Mart Associates, Inc.* 384.F.Supp.3d 1058 (May 31, 2019), the Court awarded only 16.7% ($5.8 Million of the $34.7 Million) of the PAGA penalties sought by Plaintiffs. In the context of wage and hour class action cases that settle, very little of the total settlement is paid to PAGA penalties in order to maximize payments to class members. *See, e.g, Garcia v. Gordon Trucking, Inc*., 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $3,700,000); *Chu v. Wells Fargo Invs., LLC*, 2011 U.S. Dist. LEXIS 15821, 2011 WL 672645, at *1 al. Feb. 16, 2011) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $6,900,000). In these settlements, the parties generally maximize statutory penalties and minimize PAGA penalties. *See, e.g., Franco*, 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801, at *2, *14 (approving a $10,000 PAGA award out of a total settlement amount of $2,500,000). The proposed Settlement

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    Case No. 3:17-cv-06425-SK
Page 13

provides for a gross fund value of $3,625,000 with a PAGA allocation of $100,000 with 75% ($75,000) payable to the LWDA and 25% ($25,000) distributed to the PAGA Members and falls squarely within the range of reasonableness for PAGA allocations outlined in the case law above.

Resolving this case by means of the Settlement and certifying the Classes (for settlement purposes only) will yield a prompt, certain, and substantial recovery for the Class Members. Such a result will benefit the Parties and the court system. It will bring finality to seven years of arduous litigation and will foreclose the possibility of expanding litigation.

2. **The Amount Offered in Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation.**

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a [...] speculative measure of what might have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Classes now, rather than a speculative payment many years down the road. *See generally, City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement –$3,625,000– is not only fair and reasonable, but an exceptional result, especially in light of the risks of class certification being denied and/or Plaintiffs' claims being found unmeritorious. (Clayton Dec. ¶¶ 43-44.) Moreover, the Settlement amount represents a meaningful recovery for Class Members. *See., e.g., Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474 (C.D. Cal. Oct. 10, 2019), at

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*    Case No. 3:17-cv-06425-SK
Page 14

*21 (finding 10% recovery of the total maximum damages potentially available reasonable in light of the risks of continued litigation). The negotiated non-reversionary Gross Settlement Amount of $3,625,000 is a very good recovery that will put, on average, over $1,000 into the pocketbooks of Participating Class Members, and represents approximately 26% of the maximum recovery for wage and hour violations calculated excluding the derivative claims ($13,959,673) and approximately 12% of the maximum recovery including the derivative claims ($30,357,673).[6]    (Clayton Dec. ¶ 43.) The foregoing benefits will be obtained without the expense, time, and effort of individual litigations or protracted continuation of the representative actions. (Clayton Dec. ¶ 45.) Class Members were provided estimates of their claim amounts in the Notice Packets and no objections were received. (Clayton Dec. ¶ 45; *See*, Admin Dec. ¶ 12, Ex. A.) In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

### 3.    The Extent of Discovery Completed and the Stage of the Proceedings.

The amount of discovery completed prior to reaching a settlement matters as it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

This Action has been pending since 2017.  In that time, the Parties engaged in extensive formal an informal discovery and analysis that has enabled both sides to assess the claims and potential defenses in this Action. (*See* Clayton Dec. ¶¶ 3-12, ¶ 33.) This allowed the Parties to assess the legal and factual issues that would arise if the case proceeded to trial. (*Id*.) In addition, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. (*See,* Clayton Dec. ¶¶ 41-46; Wassermann Dec. ¶¶ 31-34.) Class Counsel's liability and

---

[6] For fulsome presentation of Plaintiffs' estimate of maximum damages recoverable for claims in the Action, see the Declaration of Malcolm Clayton in Support of Preliminary Approval of Class and PAGA Settlement (Dkt. 79-1), ¶¶ 36-60.

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                    Case No. 3:17-cv-06425-SK
Page 15

damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on Class Members' pay. (*See*, Clayton Dec. ¶ 33.) Further, Plaintiffs engaged an expert to calculate the damages and penalties analysis for mediation using Defendant's records. (*Id*. ¶¶ 8, 14-15) Ultimately, facilitated by mediator Eve Wagner, the Parties used this information and discovery to fairly resolve the litigation. (*Id*. ¶ 9.)

### 4.    The Experience and Views of Counsel.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, all Parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendant's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (*See,* Clayton Dec. ¶¶ 41-46; Wassermann Dec. ¶¶ 31-34.) The endorsement by qualified and well-informed counsel of the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 5.    The Presence of a Government Participant.

Defendant provided Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA"), which states that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement....." 28 U.S.C. § 1715(b). Section 1715(d) states that a Court may not issue an order granting final approval of a proposed settlement "earlier than 90 days after the latter of the dates on which the appropriate Federal official and the appropriate State official are served with the notice." 28 U.S.C. § 1715(b). Defendant timely served the CAFA Notices and the service was completed more than 90 days prior to the hearing on Final Approval and, thus, satisfies the notice requirements. (*See*, Clayton Dec. ¶ 29.) No objections or comments have been received in response to the CAFA notices. (*Id*.)

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                    Case No. 3:17-cv-06425-SK
Page 16

In addition, on May 7, 2024, Plaintiffs submitted the proposed settlement to the LWDA through its online portal. (*Id.* ¶ 25.) On June 24, 2024, Plaintiffs submitted the moving papers seeking preliminary approval of settlement and this Court's Order granting preliminary approval to the LWDA through its online portal. (*Id.* ¶ 28.) The LWDA has not commented on or objected to the settlement. Accordingly, the Parties' submission is satisfactory under PAGA. *See, e.g.*, *Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864, at *3 (E.D. Cal. Mar. 22, 2017) (after reviewing the parties' submission of proposed settlement to LWDA, finding PAGA settlement "fair, reasonable, and adequate in light of the public policy goals of PAGA").

### 6. Class Members' Response to the Settlement is overwhelmingly positive.

The Court can presume that the Settlement is fair because not a single Class Member objected to the Settlement. "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal 2004); *see also, Mandujano v. Basic Vegetable Prods., Inc.,* 541 F.2d 832, 837-838 (9th Cir. 1976). The overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.

### 7. The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co*., 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see also, Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 324 (N.D. Cal. 2013); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution..."); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528; *Tsyn v. Wells Fargo Advisors, LLC*, No. 3:14-cv-02552-LB, ECF 172 (N.D. Cal. Nov. 1, 2018) (Beeler, M.J.) .

Here, the Settlement was a product of non-collusive, arm's-length negotiations that included two mediations and two well-respected mediators. (*See*, Clayton Dec. ¶¶ 14, 17-18.)

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                    Case No. 3:17-cv-06425-SK
Page 17

The history of this consolidated Action, litigated since 2017, further confirms the non-collusive nature of the Settlement. (*Id.* ¶ 11.)

The Parties participated in a lengthy mediation session before Eve Wagner—a skilled mediator with many years of experience mediating wage and hour class action matters—as part of the second mediation in this Action. (*Id.* ¶¶ 8-11.) The Parties then spent several months discussing settlement and negotiating the settlement following the mediation before a deal was struck. (*Id.* ¶ 10.)  Plaintiffs are represented by experienced class action litigators who strongly believe that the proposed Settlement achieves an excellent result for the Class Members.

C.    <u>The Distribution of the Settlement Proceeds Is Equitable and Tailored to the Class Members' Respective Claims.</u>

Funds will be allocated amongst Class Members in a manner that recognizes the amount of time that the particular Class Member worked for Defendant in the applicable limitations period.  The allocation method based on the number of workweeks, will ensure that workers with longer tenure subject to alleged violations receive a greater recovery. Thus, the allocation is closely tailored to each Class Members' claim.

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979-80. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

D.    <u>The Best Practicable Notice of Settlement Was Provided to the Class Members in Accordance with the Process Approved by the Court.</u>

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best notice practicable" in this case as necessary to protect the due process rights of Class Members. (Dkt. 85; *see also, In re*

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                              Case No. 3:17-cv-06425-SK
*Page 18*

*Hyundai and Kia Fuel Econ. Litig.,* 926 F.3d 539, 567 (9th Cir. 2019) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted)

Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; skip-tracing and other techniques were used to forward as many undeliverable notices as possible; Class Members also were directed to a dedicated website that included the Notice of Class Action and Private Attorneys General Act Settlement and Release and other Settlement-related information. Moreover, both the Class Notice and settlement website informed Class Members of the pendency of the action and their right to object to the Settlement. *See, Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The notice procedures meet the "best practicable notice" standard and the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

## V.     THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE.

The Settlement Administration costs are $18,450.00, as set forth in the Declaration of ILYM Group, Inc. Representative Garvin Brown, submitted herewith. (*See,* Admin Dec. ¶ 14.) The amount of administration costs was included in the Notice Packet sent to Class Members. There were no objections by Class Members to the costs of the claims administration.

ILYM provided the most competitive bid after Plaintiffs obtained quotes from other established administration firms. (Clayton Dec. ¶ 39.) The administration costs include the services of distributing the Notice Packets via U.S. mail, re-mailing any Notice Packets returned as non-deliverable but with forwarding addresses, and re-mailing the Notice Packets to any new address obtained by way of skip-trace. (*Id*. ¶ 40.) ILYM also maintained a settlement website and

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                    Case No. 3:17-cv-06425-SK
Page 19

toll-free number, was available to receive and process workweek disputes, calculate the settlement payments, calculate all applicable payroll taxes, withholdings, and deductions, and is prepared to establish a qualified fund for the Settlement, and to issue all disbursements to Class Members, Service Awards to Plaintiffs, payment to the LWDA, payment to Class Counsel for fees and costs, and payment to itself for fees in administering the settlement. (*Id.*)

ILYM will continue to administer the Settlement and provide a compliance report. Accordingly, the reasonable administrative costs of $18,450.00 should be approved. (*Id.*)

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion.

Dated: December 23, 2024

Respectfully Submitted,
LAVI & EBRAHIMIAN, LLP


*/s/ Malcolm Clayton*
_____
Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Malcolm E. Clayton, Esq.
Attorneys for Plaintiffs Hector Alvarado and Mikey Amaya, and the Settlement Classes

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Alvarado et al. v. Oak Harbor Freight Lines, Inc., et al*                                    Case No. 3:17-cv-06425-SK
Page 20